IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARLOW CUADRA, | : | Civil No. 3:16-cv-8 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Respondents | : | |

## MEMORANDUM

Petitioner Harlow Cuadra ("Cuadra"), an inmate currently confined at the State

Correctional Institution in Coal Township, Pennsylvania, filed the instant petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Cuadra challenges a conviction

and sentence imposed in the Luzerne County Court of Common Pleas. (*Id.*). For the

reasons discussed below, the Court will deny the habeas petition.

## I.    Factual Background

The factual background of this case has been summarized by the Pennsylvania

Superior Court as follows:

> The record in this case reveals that on the evening of January 24, 2007,
> Cuadra and his co-defendant, Joseph Kerekes, brutally attacked the victim,
> Brian Kocis, as a result of a dispute involving the contractual rights to produce
> pornography films.  The men nearly decapitated the victim's head with a knife
> and stabbed him in the chest and torso area twenty-eight other times.  In an
> effort to cover-up their heinous murder, the two set fire to the victim's home.
> Cuadra and his co[-]defendant Kerekes[1] were subsequently charged with an
> open count of criminal homicide.

[1]  The record indicates that Kerekes plead guilty to second degree murder and other charges, and agreed to testify against Cu[a]dra at trial[,] as Kerekes implicated Cuadra as the person who killed Kocis.

\* \* \*

[The Commonwealth sought the death penalty a[g]ainst Cuadra.]  The case proceeded to a jury trial on February 24, 2009[,] after which Cuadra was found guilty of first[-]degree murder, conspiracy to commit murder, and arson, among other offenses.  Subsequently, on March 16, 2009, the trial court sentenced Cuadra to a term of life imprisonment without the possibility of parole, as the jury declined to impose the death penalty.

*Commonwealth v. Cuadra*, 2015 WL 7260706 (Pa. Super. May 8, 2015) (citing

*Commonwealth v. Cuadra*, No. 601 MDA 2009, slip op. at 1-2 (Pa. Super. Oct. 14, 2010)

(citations modified)).

## II.    State Court Proceedings

Cuadra was arrested and charged with first degree murder, conspiracy to commit

murder, arson, and other related charges in the death of Brian Kocis.  *See* electronic docket

sheet for *Commonwealth v. Cuadra*, No. CP-40-CR-0003090-2007 (Luzerne Cty. Ct. Com.

Pl.), available at https://ujsportal.pacourts.us.

A jury trial was held from February 24, 2009 through March 12, 2009, in the Court of

Common Pleas of Luzerne County.  *See id.*  On March 12, 2009, Cuadra was found guilty

on all charges.  *See id.*  At the conclusion of the penalty phase, the jury declined to impose

the death penalty.  *See id.*  Cuadra was subsequently sentenced to a term of life

imprisonment without parole on the first degree murder charge, and an aggregate consecutive sentence of 103-206 months incarceration and 12 months probation on the remaining charges. *See id.*

Cuadra filed a timely direct appeal. (*See* Doc. 9-11, pp. 62-66, *Commonwealth v. Cuadra*, No. 601 MDA 2009) (Pa. Super. October 14, 2014)). On October 14, 2010, the Pennsylvania Superior Court affirmed the judgment of sentence. (*Id.*). Cuadra filed a petition for allowance of appeal with the Pennsylvania Supreme Court. *Commonwealth v. Cuadra*, No. 820 MAL 2010 (Pa.). On May 3, 2011, the Pennsylvania Supreme Court denied the petition for allowance of appeal. *Id.*

On May 3, 2012, Cuadra filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. *See Commonwealth v. Cuadra*, 2015 WL 7260706, at *1. On January 3, 2014, the PCRA court conducted a hearing on the issues contained in Cuadra's petition. (Doc. 9-12, pp. 1-15, Transcript of PCRA Hearing). On March 12, 2014, the court dismissed Cuadra's PCRA petition. (Doc. 9-12, pp. 17-39, *Commonwealth v. Cuadra*, No. 3090 of 2007, PCRA Opinion).

On April 9, 2014, Cuadra filed a timely notice of appeal. *Commonwealth v. Cuadra*, No. 717 MDA 2014 (Pa. Super.). Also on April 9, 2014, the PCRA court directed Cuadra to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P.1925(b).

3

*See Commonwealth v. Cuadra*, 2015 WL 7260706, at *1. On April 30, 2014, Cuadra timely

filed a concise statement of matters complained of on appeal. *See id.* In accordance with

Pa. R.A.P.1925(a), the PCRA court issued a statement directing the Superior Court to its

March 12, 2014 opinion. *See id.* On May 8, 2015, the Superior Court affirmed the decision

of the PCRA court. *Commonwealth v. Cuadra*, 2015 WL 7260706 (Pa. Super. May 8,

2015). Cuadra filed a timely petition for allowance of appeal with the Pennsylvania

Supreme Court. *Commonwealth v. Cuadra*, No. 451 MAL 2015 (Pa.). On October 7, 2015,

the Pennsylvania Supreme Court denied the petition for allowance of appeal. *Id.*

## III.    Standards of Review

The statutory authority of federal courts to issue habeas corpus relief for persons in

state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to §

2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his

confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439

(1973). "[I]t is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct.

475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based

"on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties

of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

4

## A. Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the

5

petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404

U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity

to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting

those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865

(1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

In this case, Respondents contend that Cuadra failed to properly exhausted certain

claims in his habeas petition. (Doc. 9).

## B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore,

that review on the merits of the issues presented in a habeas petition is warranted, the

scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in

pertinent part, that an application for a writ of habeas corpus premised on a claim previously

adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of,
> clearly established Federal law, as determined by the Supreme Court of the
> United States; or

> (2) [the decision] was based on an unreasonable determination of the facts in
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not

sufficient for the petitioner to show merely that his interpretation of Supreme Court

precedent is more plausible than the state court's; rather, the petitioner must demonstrate

6

that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v.*

7

*Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316

(1979). "This provision essentially requires the district court to step into the shoes of an

appellate tribunal, examining the record below to ascertain whether sufficient evidence

existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301

F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[1]). Mere

disagreement with an inferential leap or credibility judgment of the state court is insufficient

to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362,

408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding

lacks evidentiary support in the state court record or is plainly controverted by evidence

therein should the federal habeas court overturn a state court's factual determination.

*Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV. Discussion

### A. Ineffective Assistance of Trial Counsel Claims

The Sixth Amendment right to counsel is the right to the effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis*

*v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated

---

[1]    "If the applicant challenges the sufficiency of the evidence adduced in such State court
proceeding to support the State court's determination of a factual issue made therein, the applicant, if able,
shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to
support such determination."  28 U.S.C. § 2254(f).

a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446 U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a

9

probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner

must show that he or she had a reasonable likelihood of prevailing on the motion at issue,

and having prevailed on the motion, it was also reasonably likely that the result of the trial

would have been different. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy

both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002).

The inquiry may begin with either the deficient performance or prejudice prong, and the

court is not required to consider the second prong of the test if the petitioner is unable to

satisfy the first one. *Strickland*, 466 U.S. at 697.

### 1. *Failure to Raise a Duress Defense*

Cuadra argues that trial counsel was ineffective for failing to present a duress

defense. The Pennsylvania Superior Court affirmed the PCRA court's denial of this claim,

and found as follows:

> In his second ineffectiveness issue, Cuadra argues that trial counsel was
> ineffective for failing to present a defense based upon duress, or alternatively
> to request a jury instruction on duress. Brief for Cuadra at 1418. Cuadra
> suggests that a duress defense comported with his assertions that Joseph
> Kerekes was a domineering force in their relationship, and that he controlled
> Cuadra physically and psychologically. Cuadra's trial counsel testified that he
> did not pursue a duress defense because the defense theory was that Joseph
> Kerekes planned and committed the murder, and that Cuadra had no part in
> the plot or its execution. At the PCRA hearing, Cuadra's trial counsel
> explained:
>
>> Well, my understanding of duress—I might be wrong, but my

10

understanding of duress, it's an affirmative defense that you have to seek if you're acknowledging doing the killing, not that you're controlled by somebody or somebody else had control over you; but, that it's an affirmative defense to a killing. Like, I killed a person, but I was forced to do it.

Not only did [Cuadra] not acknowledge that he killed anybody[,][f]or the longest time of our defense and not until during the course of the trial, did he even acknowledge that he was there.

N.T., PCRA Hearing, 1/3/2014, at 14.

Because counsel had a reasonable basis for not presenting a duress defense, Cuadra's second allegation of ineffectiveness necessarily fails. "Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (citation omitted). Trial counsel did not pursue any sort of affirmative defense because the defense intended to demonstrate that Cuadra was not involved in the planning or execution of the murder of Brian Kocis. Because a defense based upon duress would have been inconsistent with the defense theory that Joseph Kerekes alone was responsible for the murder, there was a reasonable basis for failing to present such a defense or seek a jury instruction on duress. Suggesting alternative theories in this manner could have had the effect of confusing the jury or detracting from the credibility of the defense. Because there was a reasonable basis underlying trial counsel's strategy, Cuadra's second ineffectiveness claim is without merit.

*Commonwealth v. Cuadra*, 2015 WL 7260706, at *4.

The defense of duress will fail "if there was a reasonable, legal alternative to violating

the law, 'a chance both to refuse to do the criminal act and also to avoid the threatened

harm.'" *United States v. Bailey*, 444 U.S. 394, 410, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

11

To assert a defense of duress at his trial, Cuadra would have had to make a prima facie showing of "(1) an immediate threat of death or serious bodily injury; (2) a well-grounded fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm." *United States v. Naovasaisri*, 150 F. App'x 170 (3d Cir. 2005) (quoting *United States v. Miller*, 59 F.3d 417, 422 (3d Cir. 1995)).

The state court found that this ineffectiveness claim lacked merit. The state court expressly determined that trial counsel had a reasonable basis for failing to present a duress defense, particularly in light of the fact that a defense based upon duress would have been inconsistent with the defense theory that Cuadra was not involved in the planning or execution of the murder. The Court finds that Cuadra has not provided sufficient evidence to show that the representation by his trial counsel fell below an objective standard of reasonableness. The Court further concludes that Cuadra has not demonstrated that a reasonable probability exists that, if trial counsel had presented a duress defense, he would have been found not guilty. Furthermore, Cuadra has not shown that trial counsel's failure to present a duress defense "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Trial counsel's failure to assert a meritless defense did not violate professional norms and could not have prejudiced Cuadra. *See Strickland*, 466 U.S. 668. As such, the Court will deny habeas relief on this ineffectiveness claim.

## 2. *Failure to Object to the Court's Questions to Cuadra*

Cuadra's next issue is that trial counsel was ineffective for failing to object to

questions the trial court posed to Cuadra. In affirming the PCRA court's denial of this claim,

the Pennsylvania Superior Court found as follows:

> In his first ineffectiveness claim, Cuadra asserts that trial counsel was
> ineffective for failing to object to questions that the trial court asked of Cuadra
> during his testimony. Brief for Cuadra at 9-12. Following the
> Commonwealth's cross-examination of Cuadra, the trial court engaged in the
> following exchange with Cuadra:
>
> > [Trial Court]: I want to direct your attention to when you were in
> > the home with Mr. Kocis.
> >
> > [Cuadra]: Yes, sir. Yes, Your Honor.
> >
> > [Trial Court]: You heard a knock on the door and Mr. Kocis
> > went to answer the door.
> >
> > [Cuadra]: Yes, Your Honor.
> >
> > [Trial Court]: He opened the door a little bit and then Mr.
> > Kerekes burst in?
> >
> > [Cuadra]: Yes. Yes, Your Honor.
> >
> > [Trial Court]: Did Mr. Kerekes have anything with him when he
> > came into the home?
> >
> > [Cuadra]: No. When I saw him reach in for the knife and it was
> > not that-it was not the big one. It was that small one that-
> >
> > [Trial Court]: My question was, was he carrying anything with
> > him?

13

[Cuadra]: Not in his hands, sir. Not in his hands, Your Honor.

[Trial Court]: After Mr. Kocis was killed and you went out to the Xterra—

[Cuadra]: Yes, Your Honor.

[Trial Court]:—did Mr. Kerekes come out to the Xterra and then return to the house to start the fire?

[Cuadra]: Now I know that he returned to the home to start the fire; but when he returned to the home, it was to get another arm full of electronics. It was a total of three lap—computer towers that I physically myself saw.

[Trial Court]: My question is, when he came out to the Xterra, did he take anything back into the home with him?

[Cuadra]: I did not notice that, Your Honor. I did not.

[Trial Court]: And when he returned to the Xterra the final time and you were going to leave to go to the gas station—

[Cuadra]: Yes, Your Honor.

[Trial Court]:—who drove the Xterra?

[Cuadra]: Joseph Kerekes did, to go to the gas station.

[Trial Court]: Right. I assumed then he was wearing the same clothes when he drove the Xterra as he had when he came into the home?

[Cuadra]: Yes, he was, Your Honor; and his hands were clean, no blood on them. So I assumed that he had washed them in either a bathroom or a sink.

Notes of Testimony ("N.T."), Jury Trial, 2/24-3/12/2009, Vol. II, at 2351-52.

14

Following this questioning, the trial court gave the parties an opportunity to ask further questions in response to the court's line of questioning. Neither the Commonwealth nor defense counsel chose to ask any further questions. At the PCRA hearing, Cuadra's PCRA counsel asked trial counsel why he did not object to the trial court's line of questioning. He responded, ". . . I don't think there was anything objectionable." N.T., PCRA Hearing, 1/3/2014, at 27.

It is well-established that it is "always the right and sometimes the duty of a trial judge to interrogate witnesses. However, questioning from the bench should not show bias or feeling or be unduly protracted." *Commonwealth v. Manuel*, 844 A.2d 1, 9 (Pa. Super. 2004) (citation omitted). Furthermore, a new trial is required "only when the trial court's questioning is prejudicial, that is when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Id.* (citation omitted).

Here, the trial court's questioning of Cuadra merely clarified Cuadra's narrative of the events surrounding the homicide and the actions of Joseph Kerekes. The trial court did not comment on the credibility of this testimony nor did the court express any bias toward Cuadra. Furthermore, in its concluding charge to the jury, the trial court instructed:

> Now, you will recall that during the trial, there were obviously a considerable number of witnesses who were called. I believe that I asked a few questions of two of those witnesses. Those questions that I asked did not reflect, nor were they intended to reflect, my opinion on the evidence, on the case or on the believability of witnesses. My only purpose for asking those questions was to inquire into a matter which I thought needed to be more fully explored.

N.T., Jury Trial, 2/24-3/12/2009, Vol. II, at 2483. The content and context of the trial court's questioning do not suggest any impropriety or overstepping on the part of the trial court, and thus we agree with trial counsel that there was nothing objectionable about the trial court's conduct. Therefore, trial counsel did not provide deficient representation in failing to object to the trial court's line of questioning. Accordingly, Cuadra's first assertion of ineffectiveness of

counsel fails for a lack of arguable merit.

*Commonwealth v. Cuadra*, 2015 WL 7260706, at *3-4.

The Superior Court determined that this ineffectiveness claim lacked arguable merit, the trial judge's questioning was not improper, there was nothing objectionable about the trial judge's conduct, and trial counsel was not ineffective for failing to object to the court's line of questioning. In evaluating whether counsel's performance was deficient, the Court must defer to counsel's tactical decisions, avoid "the distorting effects of hindsight" and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689. Cuadra has not provided sufficient evidence to show that the representation by his trial counsel fell below an objective standard of reasonableness. Additionally, Cuadra has not demonstrated that there was a reasonable probability that if his trial attorney had objected to the court's questioning, the result would have been different. As the Supreme Court has clarified, trial counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Strickland*, 466 U.S. 668. Consequently, the habeas petition will be denied on this ground.

### 3. *Failure to Seek a Curative Instruction*

Cuadra also asserts that trial counsel was ineffective for failing to request a curative instruction after the Commonwealth's question to Joseph Kerekes regarding Kerekes' admission as an accomplice of Cuadra. Cuadra raised this claim in his PCRA petition, but

he did not pursue this issue on appeal to the Pennsylvania Superior Court. His failure to timely and properly pursue this claim at the state level constitutes an independent and adequate state ground sufficient to support a procedural default of the claim. *See Barnhart v. Kyler*, 318 F. Supp.2d 250 (M.D. Pa. 2004).

The merits of Cuadra's procedurally defaulted claim cannot be reviewed unless he demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the Court does not review the claim. *See McCandless*, 172 F.3d at 260; *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, he must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. *Lockhart v. Fretwell*, 506 U.S. 364, 366 (1993). Cuadra fails to acknowledge his procedural default of this claim, and fails to allege any cause and prejudice to excuse it. *See Teague v. Lane*, 489 U.S. 288, 298 (1989) (holding that the petitioner's failure to allege cause for his default precluded federal habeas review of a defaulted claim). Nor is there any indication that a failure to review this claim will result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995) (providing that "miscarriage of justice" exception requires petitioner to come forward with new evidence of

actual innocence). Consequently, Cuadra is precluded from pursuing federal habeas corpus relief with regard to this issue.

Furthermore, any attempt by Cuadra to exhaust his state remedies at this time would be futile, because this claim is procedurally defaulted due to waiver of the claim and expiration of the PCRA statute of limitations. *See* 42 Pa. C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 Pa. C.S.A. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). As such, Cuadra is in procedural default for failing to comply with the state filing requirements, and this issue will not be considered here. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### B.     Disqualification of Attorney Fannick

Cuadra challenges the trial court's decision to disqualify Demetrius W. Fannick, Esquire, from representing Cuadra. On direct appeal, the Pennsylvania Superior Court affirmed the trial court's decision granting the Commonwealth's motion to disqualify Attorney Fannick. *Commonwealth v. Cuadra*, No. 601 MDA 2009 (Pa. Super. October 14, 2010). The trial court addressed this issue as follows:

> In *United States v. Bradford*, 121 F. Sup[p]. 2d 454 (W.D. Pa. 2000) the
> District Court clearly acknowledges that the Sixth Amendment to the United

18

States Constitution guarantees a criminal defendant the right to have assistance of counsel for his defense. Because the purpose of the Sixth Amendment is to ensure that a defendant receives a fair trial, the proper consideration for a court weighing the issue of disqualification of counsel relates to the adversarial process, not on the defendant's choice of counsel. The *Bradford* Court cites *Wheat v. United States*, 486 U.S. 153, 158, 108 S.Ct. 1692, 100 L.Ed. 2d[] 140 (1988) for this proposition:

> Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.
>
> *Wheat*, 468 U.[S]. at 159, 108 S. Ct. 1692. The presumption in favor of defendant's choice of counsel "may be overcome *not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.* The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *United States v. Stewart*, 185 F.3d[] 112, 121-122 (3d Cir. 1999)[] (alteration in original), quoting *Wheat*, 486 U.S. at 164, 108 S.Ct. 1692 (1988).
>
> The trial court confronted with the duty of evaluating whether disqualification is warranted also "'has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver.'" *Stewart*, 185 F.3d at 122, quoting *United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991). "Moreover, to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation, again regardless of any purported waiver." *Moscony*, 927 F.2d at

19

749. "Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal." *Id.* at 748.

*Bradford*, 121 F. Supp. [2d] at 455.

Thus, the Sixth Amendment's guarantee to counsel of one's choosing is not absolute. It is qualified by the constitutional mandate that a defendant is represented by an effective advocate as well as the court's solemn obligation to protect the truth-seeking function of the proceedings. It is obviously this Court's duty to enforce the ethical rules governing the legal profession. It is our inviolate duty to ensure a fairly rendered verdict.

Defendant Kerekes' explanation that the aforementioned outburst was "an emotional statement" not meant to convey an impression that substantive conversations took place, fails miserably. While emotion may well have precipitated his statement, it is simply inconceivable that emotion resulted in the substance of the words attributed to him. Said differently, emotion may well have been the motivation for the statement, but being overcome by emotion certainly did not result in an untruthful message. Clearly, Kerekes' admissions in this regard belie his testimony that no substantive discussions took place. We find his explanation regarding the substance of the outburst unpersuasive and his protestations to the contrary during direct examination unconvincing.

Had Atty. Fannick testified under oath that no substantive discussions occurred, today's ruling may well be different. That Atty. Fannick elected not to do so made this Court's decision clearer.

Under all of these circumstances we find that confidential and privileged information passed from Kerekes to Fannick. Fannick must protect that information and not repeat it or use it in any way, and thus his ability to vigorously cross-examine Defendant Kerekes is effectively hampered. We find that both potential and actual conflicts of interest exist and that this situation cannot be corrected by waivers and/or consents.

We find that the Commonwealth has met its high burden that disqualification of Atty. Fannick is required.

(Doc. 9-3, pp. 29-31, *Commonwealth v. Cuadra*, No. 3090 of 2007, No. 3094 of 2007).

The trial court noted that Attorney Fannick met eight times with Cuadra's co-defendant, he spoke publicly about the case being "very defendable", and the co-defendant, in open court, told Attorney Fannick, "If you try to use anything we spoke about, I'll have you removed." (Doc. 9-3, p. 26). The trial court ultimately determined that confidential and privileged information passed from the co-defendant to Attorney Fannick, that potential and actual conflicts of interest existed, and the situation could not be corrected by waivers or consents. Because no showing has been made to disturb these factual findings, this issue is without merit. The Court finds that the state court's decision to disqualify Attorney Fannick was not contrary to, or an unreasonable application of, clearly established federal law. As such, the Court will deny habeas relief on this claim.

## C. Failure to Grant a Continuance

Cuadra argues that his right to a fair trial was violated by the trial court's refusal to grant a continuance. Cuadra raised this issue in his PCRA petition. However, the PCRA court found that this claim was waived for failure to pursue it on direct appeal. Furthermore, Cuadra failed to raise this claim on PCRA review to the Superior Court. Although Cuadra raised this issue in his PCRA petition, the issue was not raised in the appellate courts of the Commonwealth and cannot now be raised in state court due to a time bar. *See* 42 Pa.C.S.A. § 9545(b). Furthermore, Cuadra fails to acknowledge his procedural default of

this claim, and fails to allege any cause and prejudice to excuse it. Nor is there any
indication that a failure to review this claim will result in a fundamental miscarriage of justice.
For these reasons, this claim is procedurally defaulted and need not be considered here.
See Coleman, 501 U.S. at 750.

## D. Denial of Motion to Suppress Evidence

Cuadra next asserts that the trial court erred in denying his motion to suppress
evidence from the search of his home. Specifically, Cuadra claims that his Fourth
Amendment rights were violated because the search warrant issued for the seized items
was overly broad.

In Stone v. Powell, the United States Supreme Court held that "[w]here the State has
provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state
prisoner may not be granted federal habeas corpus relief on the ground that evidence
obtained in an unconstitutional search or seizure was introduced at his trial." Stone v.
Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). The Third Circuit Court
of Appeals stated, "[u]nder Stone v. Powell, a federal court may not reexamine the state
court's determination that no Fourth Amendment violation occurred, that a violation had
occurred but that introduction of its fruits was harmless, or that any Fourth Amendment
violation that might have occurred had harmless results." Gilmore v. Macks, 799 F.2d 51,
56 (3d Cir. 1986) (citing Stone, 428 U.S. 465).

In the instant matter, Cuadra raised his Fourth Amendment claim in state court.

Cuadra filed a motion wherein he sought suppression of the evidence in question. On

September 8, 2008, the trial court denied the suppression motion. (Doc. 9-4, pp. 32-43).

Cuadra then raised his Fourth Amendment claim on direct appeal. On October 14, 2010,

the Pennsylvania Superior Court affirmed the denial of the suppression motion, and affirmed

Cuadra's conviction and sentence. (Doc. 9-11, pp. 65-66, *Commonwealth v. Cuadra*, No.

601 MDA 2010 (October 14, 2010)). The Superior Court stated as follows:

> Judge Olszewski's detailed and well-reasoned opinion filed on September 8,
> 2008 denying Cuadra's suppression motion, adequately examines all of the
> evidence presented relating to the admissibility of the electronically recorded
> conversations and the items seized following execution of the search warrant
> of Cuadra's residence. We can find no error in its factual findings and
> corollary legal conclusions.

(*Id.*).

The Fourth Amendment claims presented by Cuadra in the instant petition relate to

the suppression issues in the underlying criminal case. It is clear that Cuadra was

previously afforded a full and fair hearing on his Fourth Amendment claims, having raised

this issue with the Luzerne County Court of Common Pleas, and subsequently appealing

this issue to the Superior Court, which affirmed the trial court's denial of the suppression

motion. Consequently, because Cuadra was afforded "full and fair litigation" of his Fourth

Amendment claims in state court, the Court is precluded from considering the merits of the

Fourth Amendment claims raised in the instant federal habeas petition. *Stone*, 428 U.S. at

23

494.

## E. PCRA Court's Denial of Motion for Psychiatric Evaluation

Cuadra claims that his due process rights were violated because the PCRA court

denied his motion for a psychiatric evaluation. The Pennsylvania Superior Court

determined that this claim was not cognizable under the PCRA, and ultimately affirmed the

PCRA court's denial of this claim.[2] *Commonwealth v. Cuadra*, 2015 WL 7260706, at *6-7.

The Superior Court stated:

> In his final issue, Cuadra claims that the PCRA court erred in denying his
> motion for psychiatric examination prior to the PCRA hearing. Brief for
> Cuadra at 12-14. Cuadra originally sought funding for an examination by a
> psychiatric professional before his trial for the purpose of establishing
> mitigation evidence in the event that the trial proceeded to a penalty phase.
> The trial court granted the motion; however, Cuadra never underwent the
> psychiatric evaluation. During the PCRA proceedings, Cuadra filed with the
> PCRA court a motion requesting that the psychiatric examination finally be
> performed. Following a hearing on November 12, 2013, the PCRA court
> denied Cuadra's motion.
>
> In his cursory argument as to this issue, Cuadra offers no explanation as to
> how this particular claim is cognizable under the PCRA. The PCRA provides
> an enumerated list of claims for which it may provide relief. The PCRA
> court's failure to grant a motion such as the one at issue here is not included
> among these claims. *See* 42 Pa.C.S. § 9543(a)(2). Furthermore, Cuadra's

---

[2] A claim is cognizable on PCRA review only if a petitioner alleges: (1) his conviction resulted from
a violation of the Pennsylvania Constitution or the Constitution or laws of the United States which "so
undermined the truth-determining process that no reliable adjudication of guilt or innocence could have
taken place"; (2) ineffective assistance of counsel; (3) an unlawfully induced guilty plea; (4) the government
improperly obstructed his right to appeal a meritorious issue; (5) newly discovered exculpatory evidence;
(6) a sentence greater than the lawful maximum; or (7) the court lacked jurisdiction over the proceeding.
42 PA. CONS. STAT. ANN. § 9543(a)(2).

brief on this issue is lacking in substantive development and citations to pertinent authority, as is required by Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure. See Pa.R.A.P. 2119(a). In support of his argument, Cuadra cites only one case, Commonwealth v. Holloway, 572 A.2d 687 (Pa.1990), for the proposition that, in order for a defendant to successfully argue that expert testimony should have been admitted, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence. Brief for Cuadra at 14. It is unclear how this proposition advances Cuadra's argument or helps to render his claim cognizable under the PCRA.

Commonwealth v. Cuadra, 2015 WL 7260706, at *6.

Because the Superior Court found that this issue was not cognizable under the PCRA, Cuadra waived this claim under state law and, as a result, has procedurally defaulted the claim in this forum. See Byrnes v. Mechling, 2004 WL 792760, at *11-12 (E.D. Pa. Apr. 12, 2004) (federal habeas claim was procedurally defaulted where claim was determined to be not cognizable on PCRA review). Cuadra is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Harris, 489 U.S. 255, 260-63 (1989); Morris v. Horn, 187 F.3d 333, 342 (3d Cir. 1999). Cuadra fails to address his procedural default of this claim, and fails to allege any cause and prejudice to excuse it. Furthermore, there is no indication that a failure to review this claim will result in a fundamental miscarriage of justice. See Schlup, 513 U.S. at 327. Consequently, Cuadra is precluded from pursuing federal habeas corpus relief with respect

to this issue.

Furthermore, as stated *supra*, any attempt by Cuadra to exhaust his state remedies at this time would be futile, because this claim is procedurally defaulted due to waiver of the claim and expiration of the PCRA statute of limitations. As such, this claim is procedurally defaulted in this forum.

## V. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case

26

debatable. As such, a certificate of appealability will not issue.

## VI. **Conclusion**

For the reasons set forth above, the Court will deny the petition for writ of habeas

corpus. A separate Order shall issue.

Date: March 22, 2019

Robert D. Mariani
United States District Judge